[Cite as *In re A.N.B.*, 2013-Ohio-2055.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

IN THE MATTER OF THE ADOPTION : 
OF A.N.B., et al.,                 CASE NO. CA2012-12-017

                                     :

                                                O P I N I O N
                                     :             5/17/2013

                                       :

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20124001

Kathleen Lance, Alderson Federal Prison Camp, Box A, Glen Ray Road, Alderson, West Virginia 24910, appellant, pro se

Augustus L. Ross, III, 1614 U.S. 35 East, P.O. Box 576, Eaton, Ohio 45320, for appellee

**RINGLAND, J.**

{¶ 1} Appellant, the biological mother of two children, appeals a decision of the Preble County Court of Common Pleas, Probate Division, finding her consent to the adoption of her children by their stepmother was not required.

{¶ 2} Appellant, the divorced mother of two daughters, is incarcerated at a federal prison in Alderson, West Virginia. The children's father is remarried and has custody of the children. On February 10, 2012, the stepmother filed a petition to adopt the children. The petition alleged that appellant's consent to the adoption was not necessary because appellant failed to contact or to provide support for the children in the year preceding the

adoption petition. Appellant was given notice of the petition and objected in writing, alleging that she had tried to contact the children numerous times, but was prevented from doing so by her ex-husband.

{¶ 3} Appellant, who is also remarried, filed a request to have her husband attend the hearing in her place, on the basis that he is her spouse and a witness on her behalf. Appellant also requested to appear at the hearing by telephone in order to participate in the hearing. The court denied both requests.

{¶ 4} The probate court determined appellant's consent was not necessary and granted the stepmother's petition to adopt the children. Appellant appealed the court's decision, arguing that she paid support for the children until she was incarcerated and that she has attempted contact with the children, but her ex-husband and the stepmother prevented any contact.

{¶ 5} This court reversed the trial court's decision on the basis that the transcript of the hearing did not contain any evidence to support the stepmother's allegations that appellant's consent was not required. *In re A.N.B.*, 12th Dist. No. CA2012-04-006, 2012-Ohio-3880. On remand, the probate court was instructed to "hold a hearing on the record in which both the petitioner and appellant are given the opportunity to present evidence and testimony." *Id.* at ¶ 12.

{¶ 6} On remand, the probate court set a hearing date for October 5, 2012. Appellant filed a request to continue the hearing in order to allow time to arrange an appearance by phone. Attached to the request was a memo explaining that a phone call could be arranged with the institution, either by contacting the prison counselor in charge of phone calls, or issuing a ruling that appellant must appear by phone on an assigned date. The court reset the hearing date for November 2, 2012, and granted the mother's request to appear by phone conference, ordering that the prison counselor must initiate the phone call.

{¶ 7} Appellant wrote a letter to the clerk of courts, requesting information on the exact nature of the hearing in order to prepare. She inquired if there would be a trial and testimony by the parties. The court responded to this letter, stating that the hearing scheduled for November 2, 2012 was to take testimony required to establish the information in the adoption petition. The court stated that it would "be taking evidence either in the form of testimony or exhibits from parties present." The court further indicated that it intended to establish phone contact with appellant on the date of the hearing, however, sworn testimony would not be taken over the phone.

{¶ 8} On October 26, 2012, appellant filed a motion to appear by video conference in order to protect her rights as the biological mother. She requested the court to issue a writ to the prison for a video conference. On the same date, appellant also requested that the court appoint counsel to represent her in order to protect her rights as a parent. The court denied both motions. The court indicated that there is no constitutional or statutory right to counsel. With respect to the request for a video conference, the court stated that it had "no responsibility to go to any lengths to have the biological mother appear" and that nothing in this court's remand required it. The court stated "[a]ny party to an action can appear and offer evidence. [Mother's] inability to appear is due to her incarceration. By being incarcerated she has lost certain of her rights and freedom. One of those rights is the freedom to move about."

{¶ 9} Appellant also filed a motion to continue the hearing on the basis that the prison counselor responsible for legal phone calls informed her that he is not available on the date the court set for the hearing. The court denied the motion, stating that the hearing had been scheduled since October 2, 2012. The court stated that the mother had no right to appear by phone and it was allowing the phone call "as a courtesy."

{¶ 10} On November 5, 2012, the court issued a decision finding the mother's consent

was not necessary and granting the stepmother's petition for adoption. The court's decision stated that "the biological mother was scheduled to be present by phone conference but was unable to complete the call." The court indicated that the stepmother and father were sworn and both were examined on the record by the court and by the stepmother's attorney. The court found that appellant's consent was not required because she failed to contact the children and failed to support them. The court concluded that the adoption was in the best interest of the children and granted the stepmother's petition.

{¶ 11} Appellant now appeals the court's decision. In her pro se brief, appellant does not list specific assignments of error, but instead lists three issues for our review. First, appellant argues that the court denied her due process right to be heard at the hearing. Second, appellant argues that the court denied her equal protection rights and treated her differently than a parent who is not incarcerated. Finally, appellant argues that her attempts to work with the court to exercise her rights were dismissed. Because these issues are related, we construe appellant's brief as raising a single assignment of error alleging that her due process rights were violated at the adoption hearing.

{¶ 12} The Fourteenth Amendment to the United States Constitution provides that state governments may not deprive any person of life, liberty or property without due process of law. Likewise, Article I, Section 16 of the Ohio Constitution guarantees "due course of law," which is virtually identical to the due process clause of the United States Constitution. *In re Hua*, 62 Ohio St.2d 227, 230 (1980). Due process requires that a deprivation of life, liberty or property be preceded by notice and an opportunity for hearing appropriate to the nature of the case. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487 (1985).

{¶ 13} "It is well-recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes*, 70 Ohio St.3d 46, 48 (1997), citing *In re Murray* (1990), 52 Ohio

- 4 -

St.3d 155, 156. The right of a parent to the custody of his or her child is one of the oldest fundamental liberty interests recognized by American courts. *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054 (2000). "It is well-recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes*, 70 Ohio St.3d 46, 48 (1997), citing *Murray* at 156.

{¶ 14} Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is protected by law, and thus, comes within the purview of a substantial right. *Murray* at 158. Permanent termination of parental rights has been described as the "family law equivalent of the death penalty in a criminal case and therefore, parents "must be afforded every procedural and substantive protection the law allows." *Hayes* at 48.

{¶ 15} Accordingly, the relationship between a parent and a child is a constitutionally protected liberty interest for which due process applies. *In re Adoption of Zschach*, 75 Ohio St.3d 648, 653 (1996). Due process affords a natural parent the right to notice and an opportunity to be heard before his or her parental rights are terminated by adoption. *Id.*; *State ex rel. Smith v. Smith*, 75 Ohio St.3d 418, 421 (1996); *In re Adoption of Greer*, 70 Ohio St.3d 293, 2978 (1994).

{¶ 16} Therefore, appellant had a due process right to participate in the adoption hearing in a "meaningful manner." Our focus now centers on what process was due in this case, given appellant's incarceration, the rights involved and the circumstances of the case.

{¶ 17} The basic consideration of due process is whether the person had the opportunity to be heard at a meaningful time and in a meaningful manner. *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976); *In re J.M.*, 12th Dist. No. CA2008-01-004, 2008-Ohio-6763. Due process of law "implies in its most comprehensive sense, the right of the person affected * * * to be heard, by testimony or otherwise, and to have the right of

controverting, by proof, every material fact which bears on the question of the right involved."

*Williams v. Dollison*, 62 Ohio St.2d 297 (1980).

{¶ 18} The concept of due process "is flexible and calls for such procedural protections as the particular situation demands." *Matthews* at 334. The United States Supreme Court has described the complexity of determining what process is due in a given situation:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," * * * due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Dept. of Social Services of Durham Cty., N. C.*, 452 U.S. 18, 24-25, 101 S.Ct. 2153, 2158 (1981), internal citation omitted.

{¶ 19} In considering whether parental due process rights have been infringed, courts generally apply the test set forth by the United States Supreme Court in *Matthews v. Eldridge*. *See e.g., In re Sprague*, 113 Ohio App.3d 274 (12th Dist. 1996); *In re C.M.*, 9th Dist. CA Nos. 23606, 23608, 23609, 2007-Ohio-3999. Under this test, courts must consider and weigh: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the governmental burden of additional safeguards. *Matthews* at 335.

{¶ 20} The first factor, the private interest affected, involves the parental right to care and custody of children. *Sprague* at 276-77. As discussed above, this interest has been established as an important, fundamental right. *Id.*

{¶ 21} Next, we must consider the risk of erroneous deprivation and the probable

value of additional safeguards. An assessment of this risk and the value of additional safeguards in essence requires a consideration of the strength of the parent's case. *C.M.* at ¶ 16. To establish that a biological parent's consent is not required to an adoption, the petitioner must establish that the parent failed to contact or failed to support the child in the one year preceding the petition. *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph one of the syllabus.

{¶ 22} If the petitioner meets this burden, the parent's consent will still be required if the parent establishes justification for the failure to contact and/or support. *Id.* at paragraph two of the syllabus. Significant interference or discouragement of communication by the custodial parent can amount to justifiable cause for the failure to communicate. *In re Holcomb*, 18 Ohio St.3d 361 (1985), paragraph four of the syllabus. In certain cases, an incarcerated parent may also be able to establish that the failure to support was justified. *See In re D.B.*, 7th Dist. No 11 BE 11, 2011-Ohio-4755.

{¶ 23} In this case, appellant argued in various filings that she was prohibited from contact with her children by her ex-husband and the stepmother. She also alleged that she paid child support until she was incarcerated. She also indicated that she desired her husband to be a witness on her behalf. While issues of credibility are for the trier of fact to determine, appellant alleges a factual basis, which if established by evidence and believed, could render her consent to the adoption necessary.

{¶ 24} Finally, we consider the governmental burden of additional safeguards. Consideration of this factor requires us to view what procedures were available to protect appellant's rights.

{¶ 25} We begin by noting that while an incarcerated individual does not have an absolute right to appear in a civil case in which she is a party, that same parent has a fundamental parental right with regards to her children. *Sprague*, 113 Ohio App.3d at 276.

Generally, there is no due process violation when an incarcerated parent does not appear at a parental rights termination hearing, as long as the parent has alternate means of participating. *See In re Adoption of Rogers*, 11th Dist. No. 2002-T-0171, 2003-Ohio-1424 (although incarcerated parent was not present at hearing, parent's attorney was present and an affidavit executed by the parent was admitted into evidence); *see also In re S.F.T.*, 12th Dist. Case Nos. CA2010-02-043, CA2010-02-044, CA2010-02-045, CA2010-02-046, 2010-Ohio-3706 (no due process violation where incarcerated parent was not present at permanent custody hearing, by was represented by counsel and any testimony parent wished to present was available by deposition).

{¶ 26} Clearly, the burden of the cost and safety issues involved in transferring appellant from West Virginia to Ohio for the hearing is considerable. Moreover, there is unanimity among the states that a parent incarcerated in one state has no right to be transferred into another state for a parental rights termination hearing, as long as the parent is able to participate in an alternate manner. *See Procedural Due Process Rights of Incarcerated Parents in Termination of Parental Rights Proceedings: A Fifty State Analysis*, 30 J. Fam. L. 757, 1991.

{¶ 27} With regard to the appointment of counsel as a procedural safeguard, the United States Supreme Court has determined that there is no constitutional right to counsel in proceedings to terminate parental rights. *Lassiter*, 452 U.S. at 26-27. In the context of adoption, this court has held that there is no right to the appointment of counsel. *In re Adoption of Drake*, 12th Dist. No. CA2002-08-067, 2003-Ohio-510. While the appointment of counsel is not a requirement, we note that this does not foreclose appointment in a case where no other procedural safeguard is available and therefore appointment of counsel is necessary to protect a parent's fundamental rights. *See Lassiter* at 2162; *In re Fernandez*, 399 N.W. 2d 459 (Mich. Ct. App. 1986); *In re C.A.D. for Adoption of G.M.R.*, 192 P.3d 508

(Colo. Ct. App. 2008).

**{¶ 28}** In lieu of appointing counsel or transporting an incarcerated parent to a hearing, other, less-burdensome procedural safeguards may be available to protect parental rights in termination proceedings. *See e.g. In the Interest of L.V.*, 482 N.W2d 250, 258 (citing several methods of providing due process). For example, the use of depositions has been used as a means to satisfy due process in certain situations. *In re Lisbon*, 5th Dist. No. 2003CA00318, 2004-Ohio-126 (court issued entry permitting incarcerated mother's testimony to be secured by deposition and/or any alternate method available to the parties).

**{¶ 29}** Likewise, the use of affidavits is available to protect a parent's right to be heard. *See In re adoption of Rogers*, 11th Dist. No. 2002-T-0171, 2003-Ohio-1424. Finally, telephonic participation is an alternative that requires less governmental burden while affording a measure of due process to a parent. *See In re A.M.*, 2012- ME 118, 55 A.3d 463, ¶ 22 (listing alternate means an incarcerated parent may use to participate in hearing).

**{¶ 30}** We now turn to the facts of the case before us to determine if appellant's due process rights were violated at the hearing. We begin by noting that appellant attempted to protect her rights throughout the pendency of this case by requesting to participate in the hearing and by indicating that she had evidence of justification for the failure to communicate and support. She contested the petition, filed a brief in support of her position, and filed several motions asking the court to allow her to protect her parental rights in different ways. *See A.M.*, at 463, (no due process violation where parent failed to request alternate means of participation and failed to indicate what evidence she wished to offer by her presence or testimony).

**{¶ 31}** Our review of the record indicates that appellant was foreclosed from participating in the hearing in any manner which allowed her to submit evidence and testimony. Appellant was not represented by counsel, was not present at the hearing and

was not able to present testimony or evidence, rendering her unable to participate at the hearing in any meaningful manner.

{¶ 32} As mentioned above, the court stated that any party present could submit testimony and evidence, but due to her incarceration, appellant was not able to be present at the hearing. The court indicated appellant's participation by telephone, had it occurred, was only "as a courtesy" and that sworn testimony would not be taken over the phone. We find that the facts of this case differ from many of the cases cited above, in that although the court was not required to grant appellant's motion for counsel or other motions, appellant was not given an alternative manner of protecting her rights. Although appellant was unable to appear physically, she was not represented by counsel and despite several requests to participate, was not given an alternative method to offer evidence and participate in the hearing.

{¶ 33} Accordingly, we must find that appellant was not afforded due process at the hearing. We remand this case to the trial court to hold a new hearing in which appellant is afforded some manner of meaningful participation in the hearing. This participation must offer appellant a process by which she is able to protect her parental rights by allowing her to present testimony and offer evidence on the alleged failure to contact and support the children and her justification for the failure to do so. What procedures the court choses to allow appellant to participate are within its discretion, provided appellant's due process rights are protected by a meaningful opportunity to participate in the hearing.

{¶ 34} Judgment reversed and remanded.

HENDRICKSON, P.J., and PIPER, J., concur.